IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD TIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02 C 2970 |
| | ) | |
| CITY OF CHICAGO, a municipal corp., M. KOOISTRA, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Tibbs filed a seven-count complaint against the City of Chicago and Mark Kooistra, a Chicago police officer, for claims related to his arrest and detention in March 2001. After plaintiff voluntarily dismissed two counts and we granted defendants' motion to dismiss, in part, four counts remain: excessive force (Count I), false arrest (Count VI), false imprisonment (Count II), and statutory liability for the City under 746 ILCS 10/9-102 (Count VII). Defendants now move for summary judgment on the remaining claims. Their motion is granted.

## BACKGROUND[1]

---

[1] The Background section is composed of uncontested facts from defendants' 56.1(a)(3) statement. Though plaintiff objected to most of defendants' statements, the objections have little merit. First, plaintiff objected to all facts which cited Tibbs' or Kooista's deposition testimony due to defendants' failure to include the court reporter's certification with the deposition excerpts. Defendants cured this defect in their reply by providing the court reporters' certifications for both depositions.

Second, plaintiff often objected to defendants' facts for being compound. Yet, all of defendants' facts are "short numbered paragraphs" as required by Local Rule 56.1, and none is so complicated as to confuse.

Third, plaintiff objected to many of defendants' facts as based on inadmissible hearsay. Plaintiff appears to have lodged this objection whenever a fact cited deposition testimony in which the deponent referenced another party's communication. However, not all statements made outside the courtroom by someone other than the declarant are inadmissible hearsay. Hearsay is a statement, other than one made by the declarant, "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Non-declarants' statements may be offered, not to prove the truth of the matter they are asserting, but to establish the facts and circumstances of plaintiff's arrest – in particular the information an officer had available at the

On the evening of March 18, 2001, plaintiff was in the proverbial wrong place at the wrong time and became the victim of mistaken identity. At about 11:30 p.m. that night, Kooistra and his two partners, John Heard and J. Weyforth, were patrolling the ABLA homes, a public housing project on the west side of Chicago considered by Kooistra to be "a high crime area," when they were flagged down by a pedestrian. The pedestrian identified himself as a resident of the housing complex and informed the officers that a suspicious person was hanging around a nearby building. He gave the police a cursory description of the individual – a black male – and described his clothing and location. When the officers arrived in the vicinity of the identified location they saw plaintiff, who matched the pedestrian's basic description. The officers stopped him, patted him down, and questioned him about his presence in the area. Upon request, plaintiff produced identification, which identified him as Ronald A. Tibbs and provided his birth date, October 14, 1955. The officers conducted a name check using a computer in their squad car. The name check revealed an outstanding traffic warrant for Ronald L. Tibbs, an African-American male whose birth date was January

---

time of the arrest, which is necessary for a determination of whether the officer had probable cause. Franks v. Delaware, 438 U.S. 154, 165 (1978); Woods v. City of Chicago, 234 F.3d 979, 986-87 (7th Cir. 2000). None of the uncontested facts included in the background section is based on non-declarant's statements offered for the truth of the matter asserted.
       Plaintiff also objects to defendants' citations to a police report and lockup screening record on hearsay grounds. The police report is not cited for the truth of its assertions, but rather as evidence of what the officers knew at the time of plaintiff's arrest. Furthermore, the Federal Rules of Evidence provide an exception to the hearsay rule for records, reports, statements, or data compilations that set forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C); see Adamson v. Volkmer, 680 F.Supp. 1191, 1193 n.2 (N.D.Ill. 1987). We did not consider the lockup screening record.
       Almost all of plaintiff's "denials" of defendants' facts are based on objections, not on contradictions rooted in evidence. Plaintiff contests some of defendants' facts regarding his physical injuries based on their "mischaracterization" of his deposition testimony. However, plaintiff does not cite to the record when denying any other paragraphs from defendants' statement of facts. Nor does plaintiff provide any additional uncontested facts. Thus, we are left only with uncontested facts from defendants' 56.1(a)(3) statement.

9, 1949.[2] The officers told plaintiff that there was a warrant for his arrest and then arrested him, pushing him down onto the hood of the police car, kicking apart his legs, and handcuffing him. As the officers transported plaintiff to the station for processing, he complained that the handcuffs were too tight. At the station one of the officers contacted the Chicago Police Department's central warrants division and confirmed that the warrant for Ronald L. Tibbs was still active. They were told that it was still active but were given no further information. The officers then took plaintiff to the lockup facility where different officers fingerprinted and photographed him. Kooistra and his partners had no further contact with him.

When plaintiff was placed in the lockup his handcuffs were removed. He was handcuffed again when he was transported to the Cook County Criminal Courts Facility. About two days after his arrest Tibbs was released on bond procured by his father. At the hearing on the outstanding warrant, the court found that plaintiff was not the individual named on the warrant and dropped all charges against him.

## DISCUSSION

Our function in ruling on a motion for summary judgment is to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the evidence on file shows that no such issue exists and that the moving party is entitled to judgment as a matter of law, we will grant the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002). A "metaphysical doubt as to the material facts" is not enough to create a genuine issue of fact for trial, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986); the evidence

---

[2] In his complaint, plaintiff alleges that he pointed out the difference between his middle initial, birthdate, home address and physical description, and that of the person named on the warrant. However, in response to this motion he does not support this allegation with a reference to an affidavit, deposition, or other supporting material.

must allow for a reasonable trier of fact to find for the non-movant. Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing a motion for summary judgment we draw all inferences in the light most favorable to the non-movant. DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987).

Defendants argue that they are entitled to summary judgment on all counts. Plaintiff brings his false arrest, false imprisonment, and excessive force claims pursuant to 42 U.S.C. § 1983. While § 1983 does not create substantive rights, it allows an individual to vindicate federal rights conferred by other sources – in this case the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 393-94 (1989). The Fourth Amendment protects against unreasonable searches and seizures. The reasonableness of a seizure depends on both when it is made and on how it is carried out. *Id.* at 395. Plaintiff's false arrest and false imprisonment claims contest the reasonableness of when the seizure occurred, while his excessive force claim challenges how it was carried out. The claims require this court to judge whether or not the conduct was sufficiently egregious to rise to the level of a constitutional tort.

## False Arrest and False Imprisonment

Plaintiff does not contest that Kooistra and his partners had reasonable suspicion to stop him, rather he contests the subsequent arrest. Where officers have probable cause to make an arrest there is no violation of the Fourth Amendment. Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989)("Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution."). Even in cases "where the police mistake a person for someone else they seek to validly arrest, the arrest is constitutional

if the arresting officers (1) have probable cause to arrest the person sought and (2) reasonably believe that the person arrested is the person sought." U.S. v. Marshall, 79 F.3d 68, 69 (7th Cir. 1996), *cert. denied* 519 U.S. 856 (1996). Kooistra and his partners received information that there was an outstanding warrant for Ronald L. Tibbs – information that was later confirmed by the police department's central warrant division. Plaintiff does not challenge the validity of this warrant. Therefore, we must determine whether there is a question of fact as to whether defendant reasonably believed plaintiff was the same Ronald Tibbs named in the warrant.

In Kooistra's deposition and Heard's affidavit, the officers assert that they arrested plaintiff due to the similarity of his name with that on the warrant, and his matching race and sex. The two officers had different views on the significance of plaintiff's birth date. In Heard's affidavit he claimed the closeness in the two Tibbs' birth dates further supported the arrest. Though plaintiff's date of birth was not exactly close to the date of birth listed in the warrant information – falling more than six years later – plaintiff was not of another generation. Kooistra downplayed the significance of the conflicting birth dates at his deposition, explaining that it was not uncommon for individuals listed in the police computer system to have more than one birth date due to incorrect entries and the provision of false information. The officers could not compare plaintiff's social security number or driver's license number with Ronald L. Tibbs' numbers because their computer did not provide this information with the warrant notice and they were given no further information at the station.

Plaintiff cites nothing in the record to contest that the officers arrested him based on these factors, nor does he cite any evidence that Kooistra had affirmative knowledge that he was not the man sought in the warrant. Rather, he alleges that the differences in middle

initials, birth dates, addresses and physical descriptions between plaintiff and Ronald L. Tibbs create a material question of fact as to whether Kooistra knew that plaintiff was innocent or was deliberately indifferent to his innocence. While there is evidence as to the discrepancy in middle initials and birth dates between plaintiff and Ronald L. Tibbs, plaintiff does not support his allegation that the officers were also aware of discrepancies in their addresses and physical descriptions.

The differences in middle initials and birth dates do not create a question of fact as to the reasonableness of plaintiff's arrest. The Seventh Circuit has held that officers did not violate the Fourth Amendment when they arrested the wrong individual under similar circumstances. Patton v. Przybylski, 822 F.2d 697 (7th Cir. 1987); Brown v. Patterson, 823 F.2d 167, 169 (7th Cir. 1987) *cert. denied*, 484 U.S. 855 (1987). In Patton, the defendant police officer arrested plaintiff during a traffic stop when a computer search revealed an outstanding warrant in his name. 822 F.2d at 698. After spending several days in jail, plaintiff was released when it was determined that he was the wrong man. Even though plaintiff's address and birth date differed from those on the relevant warrant, the Seventh Circuit affirmed the district court's dismissal of plaintiff's § 1983 claims, finding that no reasonable trier of fact could infer that the defendant officer acted unreasonably in making the arrest. *Id.* at 699-700.

In Brown, plaintiff Anthony Brown was arrested during a traffic stop when the defendant officer learned of an outstanding warrant for an Anthony Moseley, a suspect known to sometimes use the alias Brown. 823 F.2d at 168. The plaintiff did not share the same address nor birth date as Moseley, and he repeatedly denied being Moseley. *Id.* at 169. However, as in Patton, the Seventh Circuit held that the officer did not violate the Fourth Amendment by arresting the wrong man, and in fact, stated that the officer would have been

imprudent not to have detained him. *Id.*

As in <u>Brown</u> and <u>Patton</u>, a reasonable trier of fact could not find that Kooistra acted unreasonably even given the discrepancies between plaintiff's middle initials and birth dates and those in the warrant information. Nor does the fact that plaintiff was detained for two days following his arrest create a triable issue of fact regarding his claims. There is no evidence that Kooistra came to know that plaintiff was not Ronald L. Tibbs during that time, nor was it Kooistra's responsibility to conduct a deeper investigation into his identity. *See* <u>Baker v. McCollan</u>, 443 U.S. 137, 145-46 (1979)("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent . . . . The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury."); <u>Brown</u>, 823 F.2d at 169; <u>Holliman v. Avery</u>, 1991 WL 259496 at *4 (N.D.Ill. 1991).

Even if Kooistra did not have probable cause to arrest plaintiff, he would be entitled to qualified immunity from suit on the false arrest and false imprisonment claims. "In the false arrest context, an officer is entitled to qualified immunity from suit if a reasonable officer in the defendant's position could have mistakenly believed that probable cause existed." <u>Vainder ex rel. Vainder v. Powell</u>, 2004 WL 1660618 at *7 (N.D.Ill. 2004)(citing <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)). Thus, only if no reasonable officer could have mistakenly believed that he had probable cause to arrest plaintiff under these circumstances, would immunity be unavailable. <u>Jones v. City of Chicago</u>, 856 F.2d 985, 994 (7th Cir. 1988). It would be unreasonable to find that no reasonable officer could have drawn such a conclusion.

Excessive Force

Plaintiff also claims that the arrest violated the Fourth Amendment due to how it was conducted. *See* Graham v. Connor, 490 U.S. 386, 395 (1989) (finding that all claims that law enforcement officers used excessive force during an arrest, investigatory stop or other seizure of a free citizen should be analyzed under the Fourth Amendment's reasonableness standard.). Plaintiff alleges that Kooistra used excessive force by putting his handcuffs on too tight and pushing him down on the hood of the police car. The Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (1989). The question is whether the force used is objectively reasonable given the facts and circumstances surrounding the arrest. Specifically, courts consider the severity of the suspect's alleged crime, whether the suspect poses a threat to the officers, and whether the suspect is resisting arrest. Payne v. Pauley, 337 F.3d 767, 778 (7th Cir. 2003). When determining reasonableness courts must consider "that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97; Pauley, 337 F.3d at 779.

Under the circumstances of plaintiff's arrest – arrested on a traffic warrant, with no evidence that he posed a risk to the officers, and no evidence that he attempted to resist arrest – significant force would not be objectively reasonable. However, plaintiff does not allege that the officers used significant force. In the selected portions of deposition testimony provided to the court, plaintiff states that he complained his handcuffs were too tight on two occasions, resulting in redness on his wrists that lasted for a day and-a-half to two days. He had asked that the cuffs be loosened, but they were not until they were removed about 20 to 25 minutes

after he arrived at the station. Plaintiff never sought any medical treatment for the redness, nor did he suffer any injury from the officers kicking his legs apart during the arrest, or pushing him onto the hood of the car.

While overly-tight handcuffs can give rise to an excessive force claim, *see* Payne, 337 F.3d at 779-80; Herzog v. Village of Winnetka, 309 F.3d 1041, 1043 (7th Cir. 2003); Vainder, 2004 WL 1660618 at *8, where "there is no indication that [an] arrest was effected in an unusual or improper manner, the excessive-force claim has no possible merit," Braun v. Baldwin, 346 F.3d 761, 763 (7th Cir. 2003). Plaintiff's testimony of having his legs kicked apart and being pushed down on a car hood, without any resulting injury, and his testimony of red marks on his wrists for a day or two as a result of the excessively tight handcuffs, does not create a reasonable inference of excessive force. Where to draw the line between what a jury could or could not determine is excessive force, is, at best, an imprecise judgment, but here we think there is just not enough to constitute a constitutional tort.

## 745 ILCS 10/9-102

Finally, in Count VII, plaintiff seeks damages against the City of Chicago pursuant to 745 ILCS 10/9-102, which directs local public entities to pay tort judgments for which it or one of its employees, acting within the scope of his employment, is liable. The City is not required to pay any damages where neither it nor its employee is liable. Plaintiff has not alleged that the City is liable for his damages, outside of its obligation to indemnify its employee, and as discussed above, Kooistra is not liable. Furthermore, state statute makes clear that the City cannot be liable for an injury resulting from an employee's actions where the employee is not liable. 745 ILCS 10/2-109.

As Judge Posner has noted, these cases are "thoroughly unedifying," for many of us may

believe that those falsely arrested, due to no fault of their own, should be compensated for "the embarrassment, fear, and loss of time resulting from the arrest." Brown, 823 F.2d at 168. However, we are limited to deciding the questions before us – in this instance whether plaintiff has a triable § 1983 claim. While it is certainly unfortunate that plaintiff was mistaken for the wrong man, the Supreme Court has made clear that "[t]he Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979).

## CONCLUSION

For the foregoing reasons defendants' motion for summary judgment is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 8, 2005.